UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| MACHINERY MOUNTING SOLUTIONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 8:25-cv-2672 |
| AMERICAN VULKAN CORPORATION, | ) ) ) | |
| and | ) ) | |
| HACKFORTH HOLDING GMBH & CO. KG, | ) ) ) | |
| Defendants. | ) ) | |

Serve:
**American Vulkan Corporation**
**c/o Registered Agent,**
**J.W. Taylor, Esq.**
**20 3rd Street SW, Suite 209**
**Winter Haven, FL 33880**

**Hackforth Holding GmbH & Co. KG**
**Heerstraße 66**
**44653 Herne**
**Germany**

## COMPLAINT

Plaintiff Machinery Mounting Solutions, Inc. ("MMS"), by counsel, for its Complaint against Defendants American VULKAN Corporation ("AVC") and Hackforth Holding GmbH & Co. KG ("Hackforth") (collectively "Defendants"), states the following:

## THE PARTIES

1.      MMS is a Virginia corporation with its principal place of business in Virginia Beach, Virginia.

2.      AVC is a Florida corporation with its principal place of business in Winter Haven, Florida.  It is also a wholly owned subsidiary of Hackforth.

3.      Hackforth is a German corporation with its principal place of business and registered office address in Herne, Germany.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 because those causes of action arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

5.      This Court has supplemental jurisdiction over Counts III and IV pursuant to 28 U.S.C. § 1367(a).

6.      Personal jurisdiction over AVC exists in Florida because AVC is a citizen of Florida.

7.      Personal jurisdiction over Hackforth exists in Florida because AVC is an agent through which Hackforth conducts its business in Florida, and Hackforth purposefully directed its unlawful conduct toward Florida, as is explained more fully below.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 because this is the judicial district in which a substantial part of the events giving rise to MMS's

claims occurred and is a judicial district in which Defendants are subject to this Court's personal jurisdiction.

## STATEMENT OF FACTS

*The "RotaChock"*

9.      MMS is a design and manufacturing company that creates rigid mounting chocks for marine, industrial, pipeline, processing, and transportation machinery.

10.     MMS's signature mounting chock is called the "RotaChock."  *See* **Exhibit 1**, RotaChock Standard Brochure Cover Page.

11.     The RotaChock is a self-leveling, adjustable, and reusable chock uniquely designed to address machinery "soft foot"—*i.e.*, a condition where one or more of a machine's mounting feet do not sit flat and evenly on its base, leading to machine distortion, increased vibration, bearing damage, and difficulty achieving proper alignment.

12.     MMS produces several different RotaChock lines, including the Basic Line, the Slim Line, the Hex Line, the Tall Assembly, the Extended Adjustment Range, and the Block Type.  **Exhibit 2**, MMS's RotaChock Product Lines.

13.     Given the state-of-the-art engineering and diverse range of applications MMS's RotaChock lines have to offer to MMS's consumer base, ensuring that MMS is seen by consumers as RotaChock's source is of critical importance to MMS's success as a business and overall brand.

14.     MMS is the owner of the mark "ROTACHOCK," which is registered with the United States Patent and Trademark Office as Trademark Registration No. 3,817,029 (the "RotaChock Mark").   *See* **Exhibit 3**, RotaChock Mark Registration Certificate.

15.     The RotaChock Mark has been a valid, federally registered trademark since July 13, 2010.  Ex. 3.

16.     MMS has expended substantial time, money, and resources marketing, advertising, and promoting the RotaChock line of products through the RotaChock Mark.

17.     As a result of MMS's expenditures and efforts, the RotaChock Mark has come to signify the high quality of RotaChock products MMS offers to consumers and has acquired substantial goodwill belonging exclusively to MMS.

18.     Additionally, because of MMS's widespread and continuous use of the RotaChock Mark, MMS owns valid and subsisting federal statutory and Florida common law rights to the RotaChock Mark.

*RotaChock's Use in Foreign Commerce*

19.     MMS co-developed the RotaChock and its various permutations with Chock Design B.V., a company based in the Netherlands that is owned by Netherlands holding company Arendse Management en Beheer B.V. ("Arendse").

20.     Following their co-development of RotaChock, MMS and Arendse agreed that MMS would have exclusive rights to market and sell RotaChock

products in the United States, whereas Arendse would have exclusive rights to market and sell RotaChock products in non-U.S. markets.

21.     Upon information and belief, Arendse holds trademark rights to RotaChock in the European Union, Canada, and Australia.

22.     Out of respect for MMS's trademark rights to RotaChock in the United States, and to avoid causing confusion to United States consumers, Arendse has geo-blocked its RotaChock website from United States access—*i.e.*, internet users with a United States IP address location are prevented from accessing the contents of Arendse's RotaChock website.

23.     Additionally, to the extent Arendse sells the underlying RotaChock technology through United States distributors, it does so through the trademark "Chock Design" rather than through the RotaChock Mark.  *See* **Exhibit 4**, Chock Design Mark Registration Certificate.

*Defendants' First Known Unauthorized Use of the RotaChock Mark*

24.     As mentioned before, AVC is a wholly owned subsidiary of Hackforth.

25.     Additionally, AVC is a member of Hackforth's multinational "VULKAN Group."

26.     Hackforth, through the VULKAN Group, is engaged in the global sale of products and technology designed for use in the marine, industrial, energy, refrigeration, and air conditioning industries.

27.     In or around 2018, Arendse informed MMS that it intended to do business internationally with Hackforth, including using Hackforth as a distributor of RotaChock products.

28.     Upon learning of this, MMS reminded Arendse that any business it did with Hackforth had to respect MMS's trademark rights to RotaChock in the United States.

29.     Regrettably, however, shortly after Defendants established a business relationship with Arendse, Defendants began unfairly competing with MMS and infringing MMS's trademark rights to the RotaChock Mark.

30.     In or around November 2018, at the International WorkBoat Show in New Orleans, Louisiana—which is an annual trade conference and exposition intended to exhibit the latest technology and solutions in the commercial marine industry—AVC displayed and distributed brochures that advertised RotaChock products.

31.     On or about January 17, 2019, MMS, through prior legal counsel, sent a cease-and-desist letter to AVC informing AVC of its trademark-infringing conduct and insisting that it (1) cease and desist any and all use of the RotaChock Mark, and (2) destroy all materials with which the RotaChock Mark was used. **Exhibit 5**, January 17, 2019 Cease-and-Desist Letter.

32.     On or about February 19, 2019, AVC's counsel sent MMS's former counsel a response letter stating that AVC "is not using the Rota[C]hock mark, nor

any similar mark" and that "any copies of the Rota[C]hock mark in its possession . . . have been destroyed." **Exhibit 6**, February 19, 2019 Letter.

33.     Additionally, on or about September 9, 2024, Hackforth's Director of Global Sales and Marketing, Robert Dückmann – van Riemsdijk, sent MMS an email stating that "VULKAN will respect the trademark Rota[C]hock in the USA and will therefore not promote our chocking solutions under the name Rota[C]hock in the USA." **Exhibit 7**, September 9, 2024 Email.

*The VULKAN Group Website*

34.     Despite the representations from Defendants and their counsel, Defendants continued to (and still continue to) infringe MMS's trademark rights in the RotaChock Mark and unfairly compete with MMS.

35.     Defendants run a global website for the multinational VULKAN Group (the "VULKAN Group Website").[1]

36.     The entire VULKAN Group Website is accessible throughout the United States, including in Florida.

37.     AVC does not run its own website dedicated to any business it does on its own behalf.

38.     Instead, as is demonstrated by the screenshots of the VULKAN Group Website attached as **Exhibit 8**, AVC is identified as one of many "locations" that Hackforth does its business in through the VULKAN Group.

---

[1] *See* VULKAN, https://www.vulkan.com/en/ (last visited September 30, 2025).

39.     On the "Products" tab of the VULKAN Group Website—which appears on every separate webpage on the VULKAN Group Website, including AVC's informational webpage—Defendants advertise RotaChock products under the sub-tab "Mounts."  **Exhibit 9**, Screenshot of Mount Product Lines from the VULKAN Group Website Viewable from AVC's Information Page.

40.     When one clicks on the "All Products" subtab after first clicking "Products," then "Mounts," then "RotaChock," he or she will be taken to a page that advertises three separate RotaChock products:  (1) the RotaChock BasicLine, (2) the RotaChock Mounting Plate, and (3) the RotaChock SlimLine.  **Exhibit 10**, Screenshot of the VULKAN Group Website's Advertisement of RotaChock Products.

41.     From there, when one clicks on the links to any of the aforementioned specific RotaChock products, he or she will be taken to informational pages that provide thorough descriptions of the purpose, use, and benefits of the products. *See*, *e.g.*, **Exhibit 11**, Screenshot of the RotaChock BasicLine Webpage on the VULKAN Group's Website.

42.     Upon information and belief, Defendants do not directly sell any products they advertise on the VULKAN Group Website itself, including RotaChock products.  In other words, there is no way by which consumers can complete a purchase transaction through the VULKAN Group Website alone.

43.     Instead, if a consumer wishes to purchase products that are advertised on the VULKAN Group Website, he or she must contact AVC and/or

Hackforth by email, phone call, or by filling out and submitting a "Contact Form" on the VULKAN Group Website.

44.     Upon information and belief, Defendants are advertising RotaChock products on the VULKAN Group Website for two purposes:  (1) to sell RotaChock products in non-U.S. markets, and (2) of relevance to this action, to perform bait-and-switches on United States consumers, where such consumers develop an initial interest in RotaChock products through the VULKAN Group Website, contact Defendants to express their interest in RotaChock products, and then are referred by Defendants to "Chock Design" products (which, as explained in paragraphs 19-23 above, share the same underlying technology as RotaChock products but are marketed through Arendse's "Chock Design" trademark rather than the RotaChock Mark).

45.     Indeed, although AVC is publicly identified as a distributor of Chock Design products in the United States on Arendse's Chock Design website,[2] Defendants do not advertise Chock Design products on the VULKAN Group Website.

46.     The reason Defendants advertise RotaChock products rather than Chock Design products on the VULKAN Group Website is because RotaChock's goodwill is stronger, more profitable, and more longstanding than Chock Design's goodwill and, consequently, drives greater overall consumer interest in the underlying technology and generates more profits for Defendants.

---

[2] *See* ChockDesign, *Distributors*, https://www.chockdesign.com/about/distributors/ (last visited September 30, 2025).

*Defendants' Insufficient "Corrective" Measures*

47.     MMS has not given Defendants permission to use the RotaChock Mark, whether through advertisements on the VULKAN Group Website or otherwise.

48.     To the contrary, on or about March 13, 2025, MMS sent another cease-and-desist letter to Defendants that, among other things, insisted that Defendants discontinue any further use of the RotaChock Mark and demanded that Defendants provide documentation of their prior use of the RotaChock Mark in commerce and an accounting of the gross profits Defendants made through their use of the RotaChock Mark.  **Exhibit 12**, March 13, 2025 Cease-and-Desist Letter.

49.     To this day, Defendants have refused to stop advertising products with the RotaChock Mark on the VULKAN Group Website.

50.     Tellingly, however, shortly after Defendants received the March 13, 2025 cease-and-desist letter, they modified each of the individual RotaChock products' informational pages on the VULKAN Group Website to contain the following disclaimer:  "'RotaChock' is a trademark owned by another company (Machinery Mounting Solutions) in the U.S. and is not being used to market products within the U.S. market."  *See*, *e.g.*, **Exhibit 13**, Screenshot of Disclaimer on the RotaChock BasicLine Webpage on the VULKAN Group's Website.

51.     However, that disclaimer does not appear on the general RotaChock product webpage on the VULKAN Group Website.  *See* Ex. 10.

52.    In any event, under well-established Eleventh Circuit law, disclaimers like the one Defendants have employed here are categorically insufficient to avoid consumer confusion and, hence, liability for trademark infringement and unfair competition.

53.    In addition to the disclaimer, Defendants recently created a supposed "U.S." version of the VULKAN Group Website.[3]

54.    Upon information and belief, Defendants created the "U.S." website just a few days before the filing of this action.

55.    Despite the existence of the "U.S." website, the main VULKAN Group Website and all of its advertisements of and references to RotaChock products are still accessible throughout the United States.

56.    Additionally, one of the top results for a Google search of the term "rotachock" is a link to the RotaChock BasicLine informational webpage on the main VULKAN Group Website.  **Exhibit 14**, "Rotachock" Google Search Results.

57.    Thus, neither the disclaimers on the VULKAN Group Website nor the recent creation of the supposed "U.S." website change the fact that Defendants have unlawfully used (and are still unlawfully using) the RotaChock Mark in United States commerce.

*The Damage to MMS*

58.    Between May and July of this year—*i.e.*, after MMS became aware of Defendants advertising RotaChock products on the VULKAN Group Website, and

---

[3] *See* VULKAN, https://www.vulkan.com/en-us/ (last visited September 30, 2025).

before Defendants created the "U.S." version of the website—MMS began losing longstanding customers en masse, and consequently, its sale of RotaChock products began to significantly decrease.

59.     Additionally, Defendants' bait-and-switch conduct described in paragraph 44 above has caused significant harm to MMS's goodwill.  Specifically, the Chock Design products Defendants sell in their bait-and-switch scheme are made of material that is of poorer quality and is less resistant to the elements than MMS's RotaChock products, which has damaged the reputation of durability and quality that consumers have long associated with the RotaChock Mark.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

60.     MMS incorporates its allegations from all the preceding paragraphs as if fully stated in this section of the Complaint.

61.     The RotaChock Mark is a valid, federally registered trademark owned by MMS.

62.     Defendants have engaged in the unauthorized use of the RotaChock Mark in commerce.

63.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to cause consumer confusion as to the origin, sponsorship, and/or approval of goods that Defendants advertise and sell.

64.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to deceive consumers into believing Defendants' goods are sold,

authorized, endorsed, franchised through, or sponsored by MMS, or that Defendants are in some way affiliated with or sponsored by MMS.

65.     Defendants' conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a).

66.     Defendants committed their acts of trademark infringement with full knowledge of MMS's rights to the RotaChock Mark and with the willful, bad faith, and malicious intent to cause consumer confusion and trade on MMS's goodwill.

67.     MMS has been damaged and irreparably harmed by Defendants' trademark infringement.

## COUNT II
## FEDERAL UNFAIR COMPETITION

68.     MMS incorporates its allegations from all the preceding paragraphs as if fully stated in this section of the Complaint.

69.     Defendants have engaged in the unauthorized use of the RotaChock Mark in commerce.

70.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to cause consumer confusion as to the origin, sponsorship, and/or approval of goods that Defendants advertise and sell.

71.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to deceive consumers into believing Defendants' goods are sold, authorized, endorsed, franchised through, or sponsored by MMS, or that Defendants are in some way affiliated with or sponsored by MMS.

72.     Defendants' conduct constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

73.     Defendants committed their acts of unfair competition with full knowledge of MMS's rights to the RotaChock Mark and with the willful, bad faith, and malicious intent to cause consumer confusion and trade on MMS's goodwill.

74.     MMS has been damaged and irreparably harmed by Defendants' acts of unfair competition.

## COUNT III
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

75.     MMS incorporates its allegations from all the preceding paragraphs as if fully stated in this section of the Complaint.

76.     MMS has trademark rights to the RotaChock Mark under Florida common law.

77.     Defendants have engaged in the unauthorized use of the RotaChock Mark in commerce.

78.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to cause consumer confusion as to the origin, sponsorship, and/or approval of goods that Defendants advertise and sell.

79.     Defendants' unauthorized use of the RotaChock Mark in commerce is likely to deceive consumers into believing Defendants' goods are sold, authorized, endorsed, franchised through, or sponsored by MMS, or that Defendants are in some way affiliated with or sponsored by MMS.

80.    Defendants' conduct constitutes trademark infringement in violation of Florida common law.

81.    Defendants committed their acts of trademark infringement with full knowledge of MMS's rights to the RotaChock Mark and with the willful, bad faith, and malicious intent to cause consumer confusion and trade on MMS's goodwill.

82.    MMS has been damaged and irreparably harmed by Defendants' trademark infringement.

## COUNT IV
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

83.    MMS incorporates its allegations from all the preceding paragraphs as if fully stated in this section of the Complaint.

84.    Defendants have engaged in the unauthorized use of the RotaChock Mark in commerce.

85.    Defendants' unauthorized use of the RotaChock Mark in commerce is likely to cause consumer confusion as to the origin, sponsorship, and/or approval of goods that Defendants advertise and sell.

86.    Defendants' unauthorized use of the RotaChock Mark in commerce is likely to deceive consumers into believing Defendants' goods are sold, authorized, endorsed, franchised through, or sponsored by MMS, or that Defendants are in some way affiliated with or sponsored by MMS.

87.    Defendants' conduct constitutes unfair competition in violation of Fla. Stat. § 501.204(1).

15

88.     Defendants committed their acts of unfair competition with full knowledge of MMS's rights to the RotaChock Mark and with the willful, bad faith, and malicious intent to cause consumer confusion and trade on MMS's goodwill.

89.     MMS has been damaged and irreparably harmed by Defendants' acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, MMS, by counsel, respectfully requests that this Court enter judgment against Defendants and award MMS the following relief:

(a) Actual damages in an amount to be determined at trial;

(b) Disgorgement of Defendants' unlawfully gained profits in an amount to be determined at trial;

(c) Injunctive relief that:

(1) Enjoins Defendants from directly or indirectly using the RotaChock Mark or any permutation of the word "RotaChock" (whether such term is uppercase, lowercase, capitalized, initial capitalized, singular, plural, and regardless of font used), or any colorable imitation thereof, in connection with the advertising, marketing, promotion, distribution, offering for sale, or sale of any goods or services in the United States and its territories;

(2) Enjoins Defendants from directly or indirectly representing, by word or deed, that any of Defendants' goods are authorized, sponsored by, affiliated with, or otherwise connected to MMS;

(3) Enjoins Defendants from directly or indirectly maintaining or displaying the RotaChock Mark or any permutation of the word "RotaChock" (whether such term is uppercase, lowercase, capitalized, initial capitalized, singular, plural, and regardless of font used), or any colorable imitation thereof, on any website accessible in the United States or its territories, including the VULKAN Group Website, or in any print, digital, or promotional materials accessible in the United States or its territories; and

(4) Requires Defendants to deliver up for destruction all infringing advertisements, promotional materials, brochures, signage, or other items in their possession, custody, or control that bear the RotaChock Mark or any permutation of the word "RotaChock" (whether such term is uppercase, lowercase, capitalized, initial capitalized, singular, plural, and regardless of font used), or any colorable imitation thereof;

(d) Reasonable attorney fees;

(e) Post-judgment interest; and

(f) Any additional relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Civil Rule 1.09, MMS demands a trial by jury.

Respectfully submitted,

17

**MACHINERY MOUNTING
SOLUTIONS, INC.**

By: */s/ David Di Pietro*
      Of Counsel

David Di Pietro (Florida Bar No. 10370)
DI PIETRO PARTNERS, PLLC
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
Tel: (954) 712-3070
Fax: (954) 337-3824
david@ddpalaw.com

Christopher D. Davis (Virginia Bar No.
74809) (*pro hac vice motion pending*)
Nathan M. Hernandez (Virginia Bar No.
95817) (*pro hac vice motion pending*)
DAVIS, BURCH & ABRAMS
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
Fax: (757) 257-8614
chris.davis@davisba.com
nathan.hernandez@davisba.com
*Counsel for Plaintiff*

18