**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MACHINERY MOUNTING**
**SOLUTIONS, INC.,**

       Plaintiff,

v.                            Case No. 8:25-cv-2672-WFJ-TGW

**AMERICAN VULKAN**
**CORPORATION** and **HACKFORTH**
**HOLDING GMBH & CO. KG**,

       Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendants American VULKAN Corporation ("American VULKAN") and Hackforth Holding GMBH & Co. KG's ("Hackforth") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim. Dkt. 29. Plaintiff Machinery Mounting Solutions, Inc. ("MMS") has responded in opposition, Dkt. 36, and Defendants have replied. Dkt. 38. Plaintiff has additionally filed a Motion for Jurisdictional Discovery, requesting leave to conduct limited discovery to establish the Court's personal jurisdiction over Hackforth. Dkt. 37. After careful consideration, the Court grants Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, denies Plaintiff's Motion for Jurisdictional Discovery, and

otherwise dismisses without prejudice Plaintiff's Complaint for failure to comply with Fed. R. Civ. P. 8(a)(2) and 10(b).

## BACKGROUND

This dispute arises from the sale of mounting chocks for industrial machinery and their related trademarks. *See generally* Dkt. 1. Plaintiff MMS is the owner of the "RotaChock" mark, which is registered with the United States Patent and Trademark Office under Trademark Registration No. 3,817,029. *See* Dkt. 1-4. The RotaChock is "a device designed to address machinery malfunctions in which a machine's mounting feet do not sit flat and evenly on its base, causing improper alignment." Dkt. 29 at 3.

Plaintiff MMS reports that it co-developed the RotaChock with Chock Design B.V., which is owned by the Netherlands-based holding company, Arendse Management en Beheer B.V. ("Arendse"). Dkt. 1 ¶ 19. Allegedly, Plaintiff MMS has the exclusive rights to market and sell RotaChock products in the United States, whereas Arendse has the exclusive rights to market and sell RotaChock products in international markets. *Id.* ¶¶ 20–21. However, Arendse is reportedly authorized to sell RotaChock technology via United States distributors through their "Chock Design" mark, rather than "RotaChock." *Id.* ¶ 23. Arendse is the owner of the "Chock Design" mark, which is registered with the United States Patent and Trademark Office under Trademark Registration No. 6,358,440. *See* Dkt. 1-5.

2

Defendant American VULKAN is a wholly owned subsidiary of the Germany-based holding company, Defendant Hackforth. Dkt. 29-1 ¶¶ 5–7. In 2018, Arendse reportedly informed MMS that it intended to utilize Hackforth as a distributor of RotaChock products in international markets and of Chock Design products in the United States market. Dkt. 1 ¶¶ 27, 45. Plaintiff MMS alleges that instead, Defendants "began unfairly competing with MMS and infringing MMS's trademark rights to the RotaChock Mark [in the United States market]." *Id.* ¶ 29.

For example, in November 2018, American VULKAN purportedly displayed and distributed brochures advertising RotaChock products at the International WorkBoat Show in New Orleans, Louisiana. *Id.* ¶ 30. In January 2019, Plaintiff MMS sent American VULKAN a cease-and-desist letter, instructing it to cease and desist all use of the RotaChock mark and to destroy all materials which utilized the RotaChock mark. Dkt. 1-6. In February 2019, American VULKAN responded, stating that American VULKAN "is not using the Rota[C]hock mark, nor any similar mark, and that any copies of the Rota[C]hock mark in its possession . . . have been destroyed." Dkt. 1-7.

Hackforth also maintains a multinational website for American VULKAN and other international VULKAN subsidiaries (the "VULKAN Website"). Dkt. 29-1 ¶ 16; *see* Dkt. 1-9. The VULKAN Website is allegedly accessible throughout the United States, including in Florida. Dkt. 1 ¶ 36. Plaintiff MMS reports that on the

3

"Products" tab of the VULKAN Website, RotaChock products such as the BasicLine, Mounting Plate, and SlimLine are advertised under the sub-tab "Mounts." *Id.* ¶ 39–41; *see* Dkts. 1-10, 1-11, 1-12. However, Plaintiff MMS admits that "Defendants do not directly sell any products they advertise on the VULKAN . . . Website itself, including RotaChock products," Dkt. 1 ¶ 42, and that instead, "if a consumer wishes to purchase products that are advertised on the VULKAN . . . Website, he or she must contact [American VULKAN] and/or Hackforth by email, phone call, or by filling out and submitting a 'Contact Form' on the VULKAN . . . Website." *Id.* ¶ 43.

This is where Plaintiff MMS alleges that a "bait-and-switch" occurs, wherein United States customers contact Defendants seeking RotaChock products after viewing advertisements on the VULKAN Website, but are then referred to Chock Design products. *Id.* ¶ 44. Plaintiff MMS contends that Defendants "advertise RotaChock products rather than Chock Design products on the VULKAN . . . Website . . . because RotaChock's goodwill is stronger, more profitable, and more longstanding than Chock Design's goodwill and, consequently, drives greater overall consumer interest in the underlying technology and generates more profits for Defendants." *Id.* ¶ 46.

In March 2025, Plaintiff MMS sent Hackforth a cease-and-desist letter, instructing it to "immediately cease and desist all use of the mark 'ROTACHOCK'

4

or any confusingly similar mark in all aspects of its business," and demanding that it provide documentation of their prior use of the RotaChock Mark in commerce and an accounting of the gross profits Defendants made through their use of the RotaChock Mark. Dkt. 1-13 at 4. Following this, the VULKAN Website was allegedly modified to contain the following disclaimer: "'RotaChock' is a trademark owned by another company (Machinery Mounting Solutions) in the U.S. and is not being used to market products within the U.S. market." Dkt. 1 ¶ 50; Dkt. 1-14. However, Plaintiff MMS reports that this disclaimer does not appear on the general RotaChock product webpage. Dkt. 1 ¶ 51. Plaintiff MMS further reports that a new "U.S." version of the VULKAN Website has been created. *Id.* ¶ 53. Allegedly, the main VULKAN Website is still accessible in the United States, which still promotes RotaChock products. *Id.* ¶ 55; *see* Dkt. 1-15.

On October 1, 2025, Plaintiff filed its Complaint, alleging: Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) (Count I); Unfair Competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); Trademark Infringement under Florida common law (Count III); and Unfair Competition in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1) (Count IV). *Id.* ¶¶ 60–89. Defendants now seek dismissal of Defendant Hackforth per Rule 12(b)(2) for lack of personal jurisdiction and dismissal of all counts per Rule 12(b)(6) for failure to state a claim. Dkt. 29.

## DISCUSSION

### I.       Rule 12(b)(2): Lack of Personal Jurisdiction

To establish personal jurisdiction, "the plaintiff must establish a *prima facie* case of jurisdiction over a non-resident defendant." *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where "the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* at 1274 (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)); *see also Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). If the "complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of plaintiff." *Meier*, 288 F.3d at 1269 (citing *Madara*, 916 F.2d at 1514 n.1 (11th Cir. 1990)). A dismissal for lack of personal jurisdiction is without prejudice. *Madara*, 916 F.2d at 1514.

6

To determine whether it may exercise personal jurisdiction over a nonresident defendant, the Court looks to the applicable federal statute governing service of process, and when the statute is silent, the Court applies the forum state's long-arm statute. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). As to the federal claims—Counts I and II—the Lanham Act is silent regarding service of process. Thus, the Court must determine whether personal jurisdiction exists under Florida's long-arm statute. Under the Florida long-arm statute, personal jurisdiction may be either general or specific. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010).

### a. *General Jurisdiction*

Plaintiff MMS argues that, although Hackforth is an entity that is incorporated and has its principal place of business in Germany, Dkt. 29-1 ¶ 5, the Court may nevertheless exercise general personal jurisdiction over Hackforth based upon its relationship with its subsidiary, American VULKAN. Dkt. 36 at 4–9. The Court disagrees.

General personal jurisdiction may be exercised over a corporate defendant based on its: (1) place of incorporation or (2) principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Traditionally, "a foreign parent corporation

7

is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier*, 288 F.3d at 1272.

However, the Eleventh Circuit has recognized an exceptional case when "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) (citation modified); *see Daimler*, 571 U.S. at 139 n.19 (describing the "exceptional case" as one where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State"). "In other words, a subsidiary's contacts can justify jurisdiction over the parent when the subsidiary is a mere 'alter ego' of the parent company." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1312 (11th Cir. 2022); *Waite v. AII Acquisition Corp.*, 901 F.3d 1307, 1317 (11th Cir. 2018) (describing this standard as a "heavy burden").

Plaintiff MMS specifically asserts that such a relationship exists because American VULKAN is a "wholly owned subsidiary" of Hackforth, and that American VULKAN "merely exists to do Hackforth's VULKAN . . . business in Florida and the United States." Dkt. 36 at 7; *see* Dkt. 36-1 ¶ 6 (discussing the relationship between American VULKAN and Hackforth from the perspective of

William Vermecky, President of Plaintiff MMS). However, Hackforth provides unrebutted evidence that "Hackforth does not exert operational control over the internal day-to-day affairs of American VULKAN[,]" "Hackforth and American VULKAN have separate and independent responsibilities[,]" "Hackforth and American VULKAN maintain separate accounting books and records[,]" "Hackforth and American VULKAN also file taxes separately[,]" and "American VULKAN merely provides monthly financial and sales reports to Hackforth." Dkt. 29-1 ¶¶ 8–11.

Plaintiff MMS describes these circumstances as "mere formalities," Dkt. 36 at 7 (declining to directly rebut the circumstances as described), but courts have consistently found otherwise. *See, e.g.*, *Dawson v. Generac Power Sys., Inc.*, No. 8:24-cv-2412-KKM-LSG, 2025 WL 3754016, at *7 (M.D. Fla. Dec. 29, 2025) (finding no personal jurisdiction over the parent company where the parent did not manage the subsidiary's day-to-day activities and the entities maintained separate books and tax filings); *Quesada v. Better Earth, Inc.*, No. 6:23-cv-1809-JSS-LHP, 2024 WL 3890077, at *5 (M.D. Fla. Aug. 21, 2024) (quoting *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2017 WL 1832436, at *7 (S.D. Fla. May 8, 2017) ("[F]or [general] personal jurisdiction to attach, the parent corporation must exercise operational control of the day-to-day business of the subsidiary."); *SX Holdings, LLC v. iContainers USA, Inc.*, No. 1:22-

9

cv-20824, 2025 WL 901245, at *4 (S.D. Fla. Mar. 25, 2025) ("Plaintiffs' . . . allegations, that the Defendants operate in unison and that [the subsidiary company] only conducts business for [the parent company], are conclusory and insufficient to establish operational control."); *Twinstar Partners, LLC v. Diamond Aircraft Indus. Inc.*, No. 11-61684-CIV, 2014 WL 4102260, at *5 (S.D. Fla. Aug. 18, 2014) (reasoning that the relationship between a Florida-based corporation and a foreign corporation for which the Florida entity allegedly served as a "sales conduit" was not "sufficient in light of *Daimler* and *Goodyear* to establish general jurisdiction on an agency theory"); *see also Bibby*, 987 F.3d 1340, 1356 (11th Cir. 2021) (finding an exceptional relationship to have been sufficiently pleaded where the complaint "include[d] allegations that [a majority shareholder] unilaterally controlled [his company], ignored corporate formalities, and commingled his personal assets with corporate assets" such that the company was a "corporation in name only").

Following the persuasive authority discussed above, the Court finds that the separate corporate status of American VULKAN is more than merely formal, and that American VULKAN has at least a "semblance of individual identity." *Bibby*, 987 F.3d at 1355. American VULKAN is not a "mere 'alter ego'" of Hackforth. *See Herederos*, 43 F.4th at 1312. Plaintiff MMS has thus failed to sufficiently plead the high burden required for an exceptional case of general jurisdiction. Accordingly,

10

the Court declines to find that the present circumstances warrant general jurisdiction as to Hackforth.

Plaintiff MMS requests jurisdictional discovery regarding the following matters before the Court makes a ruling regarding its general jurisdiction over Hackforth: "The general relationship between Hackforth and [American VULKAN]; The nature of Hackforth's and [American VULKAN]'s corporate structures; The executive leadership of Hackforth and [American VULKAN]; The revenue Hackforth derives from [American VULKAN]'s business in the United States; The fact that [American VULKAN] does not conduct any business outside of Hackforth's VULKAN . . . venture; and The control Hackforth exerts over [American VULKAN]." Dkt. 37 at 5. Although parties have a "qualified right to jurisdictional discovery," this is only the case "when facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute[.]" *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017) (citation modified) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982)). Because Plaintiff MMS has failed to rebut, *see* Dkt. 36 at 7, the circumstances of the corporate relationship as described by Hackforth, *see* Dkt. 29-1 ¶¶ 8–11, and that the remainder of the matters that Plaintiff seeks discovery on would not change the Court's analysis as to its general jurisdiction, the Court denies Plaintiff MMS's Motion for Jurisdictional Discovery as to general jurisdiction. *See Thompson v. Carnival Corp.*,

11

174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (citations omitted) ("Even if he had properly requested jurisdictional discovery, there exists 'no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery.' . . . [Plaintiff] is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he 'should have had—but did not—before coming through the courthouse doors.'").

### b. *Specific Jurisdiction*

Plaintiff MMS additionally argues that the Court has specific jurisdiction over Hackforth. Dkt. 36 at 9–13. The Court disagrees.

For specific jurisdiction to be present, the claim must arise from or relate to the defendant's activity within Florida. Fla. Stat. § 48.193(1)(a); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). Of those acts, either "personally or through an agent," subjecting a nonresident to specific personal jurisdiction under Florida's long arm statute, Plaintiff MMS argues only two: (1) "Operating, conducting, engaging in, or carrying on a business or business venture in [Florida]"; and (2) "Committing a tortious action within [Florida]." Dkt. 36 at 10 (quoting Fla. Stat. § 48.193(1)(a)(1), (2)). The Court will address each one in turn.

### i. Section 48.193(1)(a)(1): Carrying on Business in Florida

Plaintiff MMS contends that the Court may exercise specific jurisdiction over Hackforth based upon carrying on business in Florida via a "website that was

accessible in Florida" and through an agency relationship with American VULKAN. Dkt. 36 at 10.

Regarding Hackforth's website, "simply having a website that can be accessed in Florida is not sufficient to establish a general course of business activity under section 48.193(1)(a)(1)." *Day v. Datta*, No. 22-CV-22572-RAR, 2026 WL 266056, at *5 (S.D. Fla. Feb. 2, 2026); *see Northwind Air Sys. v. Terra's Garden, LLC*, 273 So. 3d 1085, 1088 (Fla. 3d DCA 2019) (quoting *Trs. of Columbia Univ. in City N.Y. v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009)) ("However, '[t]he mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible.'"). Plaintiff MMS cites two cases to support the contention that, in fact, "trademark-infringing website's [mere] *accessibility* in Florida is sufficient to satisfy subsection (1)(a)(2) of Florida's long-arm statute." Dkt. 36 at 11 (citing *Louis Vuitton*, 736 F.3d at 1353–54; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283–84 (11th Cir. 2008)). The Court finds these cases to be distinguishable from the instant action, as in both *Louis Vuitton* and *Lovelady*, the Eleventh Circuit found personal jurisdiction from the commission of a tortious action under § 48.193(1)(a)(2), and not from the carrying on of business under § 48.193(1)(a)(1). *See Louis Vuitton*, 736 F.3d at 1354; *Lovelady*, 544 F.3d at

13

1283.[1] Thus, both cases are distinguishable and inapplicable in the current analysis of whether Hackforth carried on business under § 48.193(1)(a)(1).

Here, although Hackforth admits to running the VULKAN Website, Dkt. 29-1 ¶ 16, Plaintiff MMS concedes that "Defendants do not directly sell any products they advertise on the VULKAN . . . Website itself, including RotaChock products." Dkt. 1 ¶ 42. The Court finds that the mere accessibility of the Hackforth-maintained VULKAN Website in Florida does not equate to Hackforth carrying on business in Florida. *See Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-CV-332-FTM-29-SPC, 2011 WL 1232985, at *4 (M.D. Fla. Mar. 30, 2011) ("[P]laintiff asserts that defendants have a website that can be accessed in Florida, which it infers is sufficient to show a general course of business in Florida. . . . [T]he website is not itself sufficient under § 48.193(1)(a)[(1)]. Since defendants have no offices, own no land, possess no licenses in the Middle District of Florida, and there is no evidence that they have obtained revenue from Florida clients, the Court finds that no specific personal jurisdiction over defendants in Florida has been established pursuant to § 48.193(1)(a)[(1)]."). Accordingly, the Court declines to find that Hackforth's maintenance of the VULKAN Website warrants specific jurisdiction under § 48.193(1)(a)(1).

---

[1] "*Lovelady* construed a previous version of the statute, where the tortious acts provision was codified at Fla. Stat. § 48.193(1)(b). In 2013, the Florida legislature amended the statute and moved the tortious acts provision to its present location at Fla. Stat. § 48.193(1)(a)(2). However, the amendment did not alter the language of the provision or change its substance in any way." *Louis Vuitton*, 736 F.3d at 1353 n.7.

14

As to Hackforth's alleged agency relationship with American VULKAN, an agency-based argument of specific jurisdiction may be pled "where the parent entity exercises operational control over a subsidiary." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (citing *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-cv-755-T-26TBM, 2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012)). "Operational control" means "the day-to-day control of the internal affairs or basic operations of the subsidiary." *Id.* (quoting *Yellow Pages Photos*, 2012 WL 5830590, at *3); *see Faro Techs., Inc. v. Cimcore Corp.*, No. 6:05-CV-1702-ORL-31JGG, 2006 WL 1119223, at *5 (M.D. Fla. Apr. 27, 2006). "The amount of control exercised by the parent must be high and very significant." *Enic, PLC v. F.F. South & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (citing *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998)). "Jurisdictional contacts will not be imputed in the absence of such a high degree of control, even when a parent and its subsidiary otherwise have 'a very close working relationship' and 'regular and extensive contact.'" *Hard Candy,* 106 F. Supp. 3d at 1241 (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1343–44 (S.D. Fla. 2002), *aff'd*, 54 Fed. App'x 492 (11th Cir. 2002)).

Here, Plaintiff MMS does not dispute Hackforth's assertions that it "is not in the weeds of [American VULKAN]'s day-to-day operations, that the two companies have separate accounting books and records, and that the two companies file taxes

15

separately." Dkt. 36 at 7; *see* Dkt. 29-1 ¶¶ 8–11. Plaintiff MMS instead labels these circumstances as "mere formalities," Dkt. 36 at 7, but provides no further substantive allegations of the "operational control" that Hackforth may have over American VULKAN. The Court views these circumstances as more than formalities, and finds that the facts as both alleged in Plaintiff's Complaint and attested to in the parties' respective affidavits do not evince a high and very significant level of control over the internal affairs or basic operations of American VULKAN. Accordingly, the Court declines to find that Hackforth had operational control over American VULKAN sufficient for an agency relationship warranting specific jurisdiction under § 48.193(1)(a)(1).

### ii.   Section 48.193(1)(a)(2): Tortious Action Within Florida

Plaintiff MMS argues that the Court may additionally exercise specific jurisdiction over Hackforth based upon Hackforth's alleged tortious actions committed within Florida. Dkt. 36 at 11.

"Trademark infringement is treated as a 'tortious act' for purposes of the Florida long-arm statute." *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1037 (M.D. Fla. 2019) (citing *Louis Vuitton*, 736 F.3d at 1356). "[A] non-resident defendant commits a tortious act within Florida so long as the act causes injury within Florida—even if the defendant committed the act outside the state." *Hard Candy*, 106 F. Supp. 3d at 1239 (citing *Louis Vuitton*, 736 F.3d at 1353

16

n.9). Florida district courts have widely held that the injury from trademark infringement occurs in the state where the trademark owner resides. *See Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) ("Injury from trademark infringement occurs in the state where the trademark owner resides."); *J.B. Oxford Holdings, Inc. v. Net Trade*, Inc., 76 F. Supp. 2d 1363, 1366 (S.D. Fla. 1999); *see also Lovelady*, 544 F.3d at 1283–84 (declining to decide whether trademark injury occurs where owner of mark resides while noting that Florida district courts have held so).

Here, Plaintiff MMS reportedly owns the relevant RotaChock trademark, Dkt. 1 ¶ 20, as "a Virginia corporation with its principal place of business in Virginia Beach, Virginia." *Id.* ¶ 1. Thus, in accordance with the aforementioned case law, any alleged injury to Plaintiff MMS occurred in Virginia, not in Florida, preventing Plaintiff MMS from claiming that Hackfroth committed any tortious act within Florida. Accordingly, the Court finds that Hackforth could not have committed the alleged tortious actions within Florida, as is required for specific jurisdiction under § 48.193(1)(a)(2).

Having determined that Florida's long-arm statute has not been satisfied under either § 48.193(1)(a)(1) or § 48.193(1)(a)(2), the Court need not address the three-pronged due process test. *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 551 (11th

Cir. 2019) (citing *Mazer*, 556 F.3d at 1274 n.15; *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006)).

Plaintiff MMS further requests jurisdictional discovery regarding the following matters before the Court makes a ruling regarding its specific jurisdiction over Hackforth: "Hackforth's control over and involvement in the VULKAN . . . Website and its contents; Whether [American VULKAN] sold mounting chocks to Florida consumers via Defendants' bait-and-switch scheme; The extent to which Hackforth was directly involved in the infringing bait-and-switch sales between [American VULKAN] and Florida consumers; and Communications, decisions, and/or agreements by and/or between Hackforth and [American VULKAN] regarding how either or both of them would respond to MMS's pre-litigation efforts to enforce its trademark rights." Dkt. 37 at 5–6. As previously explained, parties only have a "qualified right to jurisdictional discover" "when facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute[.]" *ACLU*, 859 F.3d at 1341 (citation omitted). Because Plaintiff MMS has failed to rebut key facts as to its theories of specific jurisdiction via carrying on business, Fla. Stat. § 48.193(1)(a)(1), and the commission of torts, § 48.193(1)(a)(2), and because the remainder of the matters that Plaintiff seeks discovery on would not change the Court's analysis as to its specific jurisdiction, the Court denies Plaintiff MMS's Motion for Jurisdictional Discovery as to specific jurisdiction. *See Encore Select,*

18

*Inc. v. Great Atl. & Pac. Tea Co., Inc.*, No. 8:14-cv-935-T-23TBM, 2014 WL 2548176, at *1 (M.D. Fla. June 5, 2014) (citation omitted) ("[T]he plaintiff in this action identifies no disputed fact; the plaintiff 'merely has a hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction. On this basis, the plaintiff has not shown it is entitled to jurisdictional discovery.'").

The Court thus finds that Plaintiff MMS has failed to properly allege that the Court has either general or specific personal jurisdiction over Defendant Hackforth. Therefore, the Court grants Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and dismisses Defendant Hackforth from this action. The Court additionally denies Plaintiff MMS's Motion for Jurisdictional Discovery, as to both general and specific personal jurisdiction.

## II.   Shotgun Pleading

Complaints that violate Fed. R. Civ. P. 8(a)(2) and 10(b) "may be classified as a shotgun pleading. A shotgun pleading 'incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.'" *Muhammad v. Muhammad*, 654 F. App'x 455, 457 (11th Cir. 2016) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)). "As a result, it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla.*

19

*Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). "The proper remedy for a shotgun pleading is for the court to order repleading for a more definite statement of the claim." *Id.* (citing *Wagner*, 464 F.3d at 1280).

Plaintiff MMS's Complaint is a shotgun pleading because each count incorporates the allegations of all preceding counts. All four counts begin by stating that "MMS incorporates its allegations from all the preceding paragraphs as if fully stated in this section of the Complaint." Dkt. 1 ¶¶ 60, 68, 75, 83. Therefore, the Court dismisses Plaintiff MMS's complaint without prejudice and affords it an opportunity to amend its pleading.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1)    Defendants American VULKAN Corporation and Hackforth Holding GMBH & Co. KG's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Dkt. 29, is **GRANTED**. Defendant Hackforth Holding GMBH & Co. KG is **DISMISSED** and the Clerk is directed to terminate Defendant Hackforth Holding GMBH & Co. KG from this action.

(2)    Plaintiff Machinery Mounting Solutions, Inc.'s Motion for Jurisdictional Discovery, Dkt. 37, is **DENIED**.

(3)    Plaintiff Machinery Mounting Solutions, Inc.'s Complaint, Dkt. 1, is

**DISMISSED without prejudice**. Any amended pleading must be filed within

**fourteen (14)** days of this Order.

**DONE AND ORDERED** at Tampa, Florida, on March 12, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

21