**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MACHINERY MOUNTING SOLUTIONS, INC.,**

Plaintiff,

**v.** Case No. 8:25-cv-2672-WFJ-T_W

**AMERICAN VULKAN CORPORATION.**

Defendant.
_______________________________________/

**ORDER**

Before the Court is Defendant American VULKAN Corporation's ("AVC") Motion to Dismiss. Dkt. 52. Plaintiff Machinery Mounting Solutions, Inc. ("MMS") has responded in opposition, Dkt. 57, and Defendant AVC replied. Dkt. 61. The Court heard oral argument on June 12, 2026. Dkt. 65. Upon careful consideration, the Court denies Defendant AVC's Motion to Dismiss.

**BACKGROUND**

This dispute arises from alleged trademark infringement involving mounting chocks for industrial machinery. *See generally* Dkt. 43. Plaintiff MMS designs mounting chocks for machinery used in marine, industrial, processing, and transportation industries. Dkt. 43 ¶ 7. Plaintiff MMS owns the RotaChock trademark (the "RotaChock Mark"), which has been registered with the United States Patent

and Trademark Office since July 13, 2010, under Trademark Registration No. 3,817,029. *Id.* ¶ 12; *see* Dkt. 43-3.

The RotaChock technology was co-developed with non-party Chock Design B.V., a Netherlands-based company owned by non-party Arendse Management en Beheer B.V. ("Arendse"). Dkt. 43 ¶ 18. Plaintiff MMS and Arendse agreed that Plaintiff MMS would hold exclusive rights to the RotaChock Mark within the United States, while Arendse would retain exclusive rights in non-U.S. markets. *Id*. ¶ 18. However, Arendse was permitted to sell the underlying technology through distributors in the United States under the "Chock Design" trademark rather than the RotaChock Mark. *Id*. ¶ 21; *see* Dkt. 43-4.

Defendant AVC is a wholly owned subsidiary of non-party Hackforth Holding GmbH & Co. KG ("Hackforth"), a German company. Dkt. 43 ¶ 22. Defendant AVC is a member of Hackforth's multinational "VULKAN Group," which engages in the global sale of various products and technologies. *Id.* ¶¶ 23, 24. Arendse reportedly entered into a business relationship with Hackforth and utilized Hackforth and its subsidiaries (including Defendant AVC) as distributors of RotaChock products. *Id.* ¶ 25. After being informed of such, Plaintiff MMS contends that it emphasized to Arendse that any business relationship with Hackforth must respect Plaintiff MMS' exclusive trademark rights to the RotaChock Mark within the United States. *Id.* ¶ 26. Plaintiff MMS then alleges that—after this relationship

was established—Defendant AVC began infringing upon Plaintiff MMS' trademark rights in the RotaChock Mark. *Id.* ¶ 27. Two separate instances of infringement are alleged.

The first instance reportedly occurred at the International WorkBoat Show held in New Orleans in November, 2018. *Id.* ¶ 28. According to Plaintiff MMS, Defendant AVC advertised products utilizing the RotaChock Mark through brochures and other promotional displays at the conference. *Id*. On January 17, 2019—following the event—Plaintiff MMS sent Defendant AVC a cease-and-desist letter regarding the alleged trademark infringement. *Id.* ¶ 29; *see* Dkt. 28-5.

On February 19, 2019, Defendant AVC responded by letter, stating that it was "not using the Rota[C]hock mark, nor any similar mark" and that "any copies of the Rota[C]hock mark in its possession . . . have been destroyed." Dkt. 43 ¶ 30; *see* Dkt. 43-6. On September 9, 2024, Defendant AVC's Director of Global Sales and Marketing stated by email that "VULKAN will respect the trademark Rota[C]hock in the USA and will therefore not promote our chocking solutions under the name Rota[C]hock in the USA." Dkt. 43 ¶ 31; *see* Dkt. 43-7.

The second instance allegedly occurred via a website operated by Hackforth for its various VULKAN Group subsidiaries, including Defendant AVC (the "VULKAN Group Website"). Dkt. 43 ¶ 33. The VULKAN Group Website was not operated by Defendant AVC, as Defendant AVC was merely identified as one of the

"locations" where Hackforth performed business through the VULKAN Group. *Id.* ¶ 36; *see* Dkt. 43-8. Until shortly after the filing of the present case, the VULKAN Group Website had allegedly been advertising RotaChock products. Dkt. 43 ¶ 38. Plaintiff MMS contends that at no point did it give permission to Defendant AVC to use the RotaChock Mark through any form of advertising on the VULKAN Group Website. *Id.* ¶ 47.

Specifically, Plaintiff MMS claims that on the "Products" tab of the VULKAN Group Website, RotaChock products such as the BasicLine, Mounting Plate, and SlimLine were advertised under the sub-tab "Mounts." *Id.* ¶¶ 39–41; *see* Dkt. 43-10. By utilizing this tab, these products were allegedly available on every webpage of the VULKAN Group Website, including an informational page for Defendant AVC. Dkt. 43 ¶ 39; *see* Dkt. 43-9.

Plaintiff MMS admits that Defendant AVC "did not directly sell any products it advertised on the Prior VULKAN Group Website itself, including RotaChock products," Dkt. 43 ¶ 42; instead, "if a consumer wished to purchase products that were advertised on the VULKAN Group Website, he or she was required to contact [Defendant] AVC by email, phone call, or by filling out and submitting a 'Contact Form' on the . . . VULKAN Group Website." *Id.* ¶ 43. This is where Plaintiff MMS alleges that a "bait-and-switch" occurs, where United States customers contact Defendant AVC seeking RotaChock products after viewing advertisements on the

VULKAN Group Website, but are then referred to Arendse's Chock Design products. *Id.* ¶ 44. Plaintiff MMS contends that the VULKAN Group Website "advertised RotaChock products rather than Chock Design products . . . because RotaChock's goodwill is stronger, more profitable, and more longstanding than Chock Design's goodwill and, consequently, drove greater overall consumer interest in the underlying technology and generated more profits for [Defendant] AVC." *Id.* ¶ 46.

On March 13, 2025, Plaintiff MMS sent another cease-and-desist letter to AVC, which instructed Defendant AVC to "immediately cease and desist all use of the mark 'ROTACHOCK' or any confusingly similar mark in all aspects of its business," and demanding that it "provide documentation of its prior use of the RotaChock Mark in commerce and an accounting of the gross profits it made through its use of the RotaChock mark." *Id.* ¶ 48; *see* Dkt. 43-12. Following the receipt of this letter, Defendant AVC reportedly modified the VULKAN Group Website to include the following disclaimer: "'RotaChock' is a trademark owned by another company (Machinery Mounting Solutions) in the U.S. and is not being used to market products within the U.S. market." Dkt. 43 ¶ 49.

On October 1, 2025, Plaintiff MMS filed its initial Complaint against Defendant AVC and Hackforth. Dkt. 1. On March 12, 2026, the court dismissed Hackforth as a defendant for lack of personal jurisdiction and further dismissed the

Complaint as an impermissible shotgun pleading. Dkt. 42. On March 26, 2026, Plaintiff MMS filed the operative Amended Complaint, alleging causes of action against Defendant for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) (Count I); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); Florida common law trademark infringement (Count III); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count IV). Dkt. 43 ¶¶ 54–83. On April 16, 2026, Defendant AVC filed the present motion. Dkt. 52.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief, to give the defendant fair notice of the claims and grounds. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015).

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

**DISCUSSION**

Each claim brought by Plaintiff MMS is reliant on an analysis of trademark infringement. This is because the legal analyses for federal unfair competition, Florida common law trademark infringement, and FDUTPA have been held to the same legal standard as trademark infringement under the Lanham Act. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652–53 (11th Cir. 2007); *see also Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016).

A claim of trademark infringement under the Lanham Act requires a plaintiff to allege that a defendant's mark is likely to cause consumer confusion. *PlayNation Play Sys., Inc. v. Velex Corp.,* 924 F.3d 1159, 1165 (11th Cir. 2019) (citing *Frehling Enter., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)); *see* 15 U.S.C. § 1114(1).

Defendant AVC makes three principal arguments as to why Plaintiff MMS' trademark infringement claim is insufficiently pleaded, and thus why the Court should dismiss all claims of the Amended Complaint: (I) the initial interest confusion theory of trademark infringement is not recognized in the Eleventh Circuit; (II) the

advertised products were considered "gray-market goods" and (III) the trademark infringement claim is barred by laches. Dkt. 52 ¶¶ 7–14. The Court addresses each argument in turn.

## I. Initial Interest Confusion

Defendant AVC first argues for dismissal as to the likelihood of consumer confusion because Plaintiff MMS' reliance on the theory of initial interest confusion. Dkt. 57 ¶¶ 5–6. Specifically, Defendant AVC posits that initial interest confusion is not an actionable theory of trademark infringement, as it has not yet been recognized by the Eleventh Circuit. *See* Dkt. 52. "Initial interest confusion . . . occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *See USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC,* 165 F. Supp. 3d 1256, 1265 (S.D. Fla. 2016) (quoting *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002)).

The Eleventh Circuit has not yet held regarding whether initial interest confusion is an actionable theory under the Lanham Act. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1347 (11th Cir. 2012) ("[W]e need not reach the question whether initial interest confusion is actionable in the Eleventh Circuit."). Consequently, some district courts in the Eleventh Circuit are reluctant to find initial interest confusion theory actionable. *See, e.g.*, *USA Nutraceuticals Grp., Inc.*, 165 F.

Supp. 3d at 1266 ("The Court declines to adopt, at this early juncture, a yet-to-be-recognized legal theory. Nevertheless, even assuming, *arguendo*, that initial interest confusion is a viable cause of action in the Eleventh Circuit, [the plaintiff's] use of the [allegedly infringing] Mark . . . does not establish such confusion."); *Pro Video Instruments, LLC v. Thor Fiber, Inc.,* No. 6:18-CV-1823-GAP-LRH, 2020 WL 11421203, at *18 (M.D. Fla. Apr. 22, 2020) ("[T]he Court finds that Plaintiff's claim, which relies on the initial interest confusion doctrine, is not actionable in the Eleventh Circuit. But even if it were, Plaintiff has failed to produce sufficient evidence from which a reasonable juror could find a likelihood of confusion.").

However, courts in this circuit have permitted Lanham Act claims under initial interest confusion theory. *See, e.g.*, *Platinum Props. Inv. Network, Inc. v. Sells,* No. 18-61907-CIV, 2019 WL 2247544 at *7 (S.D. Fla. Apr. 11, 2019) (finding that the reasoning underlying the initial interest confusion theory is supported by existing precedent and may suffice to establish Lanham Act liability). Furthermore, nearly every federal circuit that has addressed initial interest confusion has embraced it. *See, e.g.*, *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 260 (2d Cir. 1987); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 294 (3d Cir. 2001); *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 204 (5th Cir. 1998); *PACCAR Inc. v. TeleScan Techs., L.L.C.,* 319 F.3d 243, 253 (6th Cir. 2003); *Promatek Indus., Ltd.*, 300 F.3d at 812; *Hoffmann Bros. Heating & Air*

*Conditioning, Inc. v. Hoffmann Air Conditioning & Heating, LLC,* 154 F.4th 953, 959 (8th Cir. 2025), *reh'g denied*, No. 24-1289, 2025 WL 2939276 (8th Cir. Oct. 16, 2025); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1063 (9th Cir. 1999); *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 1238 (10th Cir. 2006). The First Circuit—like the Eleventh Circuit—has not yet taken a position on initial interest confusion. *See Hasbro, Inc. v. Clue Computing, Inc.,* 232 F.3d 1, 2 (1st Cir. 2000). Currently, only the Fourth Circuit has disclaimed this theory in favor of a more holistic approach. *See Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005).

The Court concludes that existing Eleventh Circuit precedent does not foreclose Plaintiff MMS' theory at the pleading stage. At this stage, Plaintiff MMS need only plausibly allege facts supporting a likelihood of consumer confusion. The Court finds that it has done so under a theory of initial interest confusion, in line with other courts in this Circuit and with other circuits. Accordingly, the Court declines to dismiss Plaintiff MMS' claims on this basis.

## II. Gray-Market Goods

Defendant AVC then argues that MMS has failed to plausibly allege a likelihood of consumer confusion because the advertised products are allegedly "gray-market goods." Dkt. 52 ¶ 12. A gray-market good is "a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent

of the United States trademark holder." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). When dealing with gray-market goods, a court must be "concerned with subtle differences, for it is by subtle difference that consumers are most easily confused." *Sueros & Bebidas Rehidratantes, S.A. de C.V. v. Am.'s Prods. Distrib., Inc.*, No. 2:24-CV-00791-JES-KCD, 2024 WL 4499215, at *2 (M.D. Fla. Oct. 16, 2024) (citation omitted).

Indeed, while "[t]he resale of genuine trademarked goods generally does not constitute infringement[,] . . . the resale of a trademarked product that is *materially different* can constitute a trademark infringement." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301–02 (11th Cir. 2001) (emphasis added). As the Eleventh Circuit explained, "[t]his rule is consistent with the purposes behind the Lanham Act, because materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark." *Id.* at 1302 (citation omitted). Here, even assuming the gray-market goods doctrine applies, dismissal is unwarranted at the present stage. Whether the products advertised through the VULKAN Group Website are materially different from Plaintiff MMS' authorized products presents a factual question inappropriate for resolution on a Rule 12(b)(6) motion.

Accepting the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff MMS' favor, the Court cannot conclude as a matter of law

that the advertised products fall outside the protections of the Lanham Act under the gray-market goods doctrine. Defendant AVC may renew this argument on a more complete factual record. Accordingly, the Court declines to dismiss Plaintiff MMS' claims on that basis.

**III. Laches**

Defendant AVC lastly argues for dismissal of the trademark infringement claim as to the distribution of brochures because it is allegedly barred by the doctrine of laches. Dkt. 52 ¶ 14. The question of laches can lead to estoppel of a plaintiff's exclusive claim to use a mark. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1517 (11th Cir. 1984). A laches defense requires a defendant to show three elements: (1) "a delay in asserting a right or a claim"; (2) "that the delay was not excusable"; and (3) "that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir. 1986).

A presumption of laches can arise in a trademark case if the plaintiff files suit more than four years after discovering the allegedly infringing conduct. *See id.* at 1546. However, an affirmative defense—such as laches—generally will not support a motion to dismiss. *See Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985). Indeed, laches is a fact-intensive affirmative defense and has been considered an unsuitable basis for dismissal at the pleading stage. *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.,*

151 F. Supp. 3d 1268, 1280 (M.D. Fla. 2015).

Here, the Court finds that Defendant AVC cannot properly assert the doctrine of laches against Plaintiff MMS at this stage because laches is a fact-dependent affirmative defense that is generally not suitable for resolution on a motion to dismiss. Defendant AVC may renew this argument on a more complete factual record. Accordingly, the Court declines to dismiss Plaintiff MMS' claims on this ground.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant American VULKAN Corporation's Motion to Dismiss, Dkt. 52, is **DENIED**.
2. Plaintiff Machinery Mounting Solutions, Inc. and Defendant American VULKAN Corporation must mediate. A mediator must be appointed within **FOURTEEN (14)** days of this order. If the parties cannot agree upon a mediator within this time, one will be appointed. Mediation shall be completed within **ONE-HUNDRED TWENTY (120)** days of this order.

**DONE AND ORDERED** at Tampa, Florida, on July 22, 2026.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record